IN THE UNITED STATES DISTRICT COURT
FOR CONNECTICUT

IN THE MATTER OF THE SEARCH OF      :      No. 3:24-mj-241      (SDV)
584 NEWFIELD AVENUE, THIRD FLOOR,   :
APARTMENT #3, BRIDGEPORT,           :
CONNECTICUT 06607                   :                  MAR 20 2024 AM9:30
                                                       FILED - USDC - BPT - CT

## AFFIDAVIT

I, Kyle S. Lipeika, a Task Force Officer with the Federal Bureau of Investigation ("FBI"),

New Haven Division, being duly sworn, do hereby depose and state the following:

1.      I am a sworn police Officer with the Norwalk Police Department in Connecticut and have

been so employed since February 5, 2009. I have held previous assignments with the Norwalk

Police Special Services Division Strategic Narcotics Enforcement Team, Norwalk Police Special

Services Division Investigator, and the FBI Joint Terrorism Task Force.

2.      During the course of my career, I have participated in numerous criminal investigations,

including investigations into suspected narcotics trafficking, firearms trafficking, violent

criminal activity, racketeering, and money laundering. My participation in these investigations

has included coordinating controlled purchases of narcotics utilizing confidential informants and

cooperating witnesses; coordinating the execution of search and arrest warrants; conducting

electronic and physical surveillance; analyzing records related to narcotics trafficking; and

testifying in Grand Jury and District Court proceedings. I have participated in investigations into

organized criminal enterprises that include violent street gangs and complex narcotics trafficking

organizations. Finally, I have participated in several investigations involving the use of court-

authorized interceptions of wire and electronic communications.

3.      My current assignment is as a Task Force Officer for the FBI with Bridgeport Safe

Streets Task Force (the "Task Force"). The Task Force focuses its efforts primarily on the

1

investigation and prosecution of groups and individuals engaged in violent activities which typically involve the possession and use of firearms and often are connected with narcotics trafficking. Based upon my experience and training, I am familiar with the manner and means commonly employed by narcotics traffickers, including the manner and means by which narcotics traffickers communicate, as well as the devices commonly utilized by them, and those methods employed by narcotics traffickers in an effort to avoid detection by law enforcement. I know the relative wholesale and retail value of various types of controlled substances including cocaine, cocaine base (crack), oxycodone, fentanyl, and heroin, among others. I am familiar with the terminology and slang commonly employed by drug traffickers. I am also familiar with various types of firearms and ammunition, including those that are commonly used by narcotics traffickers.

4.      I am deputized as an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am participating in the investigation which is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed herein.

5.      As part of my duties, I am currently participating in an investigation into criminal conduct involving a group of individuals known to be a part of the Rollin 30's Crips gang. The "Rollin 30's" primarily were based within the Colonial Village Housing Project on the west side of Norwalk, CT, but now are living and operating around the greater Fairfield County area. The Rollin 30's are affiliated with the nationally recognized street gang "The Crips." Many members of the Rollin 30's have long histories of violence and drug-related activity.

2

6.        I am currently investigating JERMEL BATES, a/k/a "Mel Kitty" or "Kitty," for

violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) (possession with the intent

to distribute controlled substances, including cocaine, heroin, and fentanyl) (the "TARGET

OFFENSES"). This affidavit is submitted in support of a search warrant for Bates's primary

residence—584 Newfield Avenue, Third Floor, Apartment #3, Bridgeport, Connecticut 06607.

The residence is more fully described in Attachment A, hereinafter the "TARGET PREMISES."

7.        I know BATES through numerous Norwalk Police-involved incidents and investigations

involving narcotics trafficking, shootings, and other gang-related activity. On July 15, 2015,

BATES was a suspect in two separate shootings in Norwalk. On June 30, 2016, Norwalk Police

arrested BATES with six hundred and fourteen (614) bags of heroin that was packaged for street-

level sale. (Norwalk Police Case #16-27481). Following his arrest, BATES was incarcerated in

the State of Connecticut Department of Corrections (the "DOC"). While in the DOC, the

Security Division identified BATES as a Rolling 30's member and designated him to a Security

Risk Group (SRG). Since BATES's release from the DOC, he has continued his criminal activity

and is suspected to have been involved in various violent incidents. For example, on November

4, 2021, BATES was identified as a suspect in a shooting at 11 Merwin Street Norwalk, CT.

(Norwalk Police Case #21-49074). On November 5, 2021, BATES was identified as a suspect in

a stabbing at 64 North Main Street Norwalk, CT. On August 23, 2022, BATES was identified

through surveillance and confidential informant information as being a co-conspirator in a

narcotics investigation. (Norwalk Police Case #22-32392).

8.        I have personally participated in this investigation and have also received information

from other members of the Task Force, including from Officers and Detectives of the Bridgeport

Police Department, hereinafter referred to as the BPD. I have reviewed reports and other

documentation, seen other evidence, and am fully familiar with the investigation. I have not included each and every fact known to me concerning this investigation, but I have set forth those facts which I believe are necessary to establish the existence of probable cause to support the issuance of the warrant requested herein.

## PROBABLE CAUSE

9.      During the early morning hours of June 25, 2023, Bridgeport Police Officers Nathan Fowler, Rory Anderson, and Israel Colon responded to 16 Summerfield Avenue in Bridgeport, Connecticut on a report of a Motor Vehicle Accident involving a blue Nissan Altima (CT REG: BH09540). A complainant had notified BPD dispatch that the operator of the Nissan Altima had fled the scene following the accident. When they arrived at 16 Summerfield, the BDP officers found the Nissan Altima where it had crashed into the rear end of a Silver 2013 Lincoln MKX, CT REG: AZ56094. The officers observed that heavy damages were sustained to the front of the Nissan. They also observed blood-like substances within the exterior and interior of the vehicle.

10.     Through investigative measures, Officer Fowler received from an eyewitness a photograph of a black male and female exiting the Nissan before they fled the scene. Officer Fowler contacted BPD dispatch to check both Bridgeport and St. Vincent Hospitals for injuries consistent with a motor vehicle accident.

11.     Consistent with BPD policy as to abandoned vehicles, the BPD officers conducted an inventory search of the vehicle in preparation for the vehicle to be towed. Located within the vehicle's glove box was the registration and insurance cards, as well as multiple plastic-wrapped, sealed contraband items and a prescription pill bottle with the name of "BATES Jr, Jermel" on it. Officer Fowler collected all evidence with gloved hands and placed them into an evidence bag. As he removed the evidence from the glove box, he photographed each item, which included:

**Item 1:** One (1) clear sandwich bag containing an off-white rock like substance. This item was tested using NARK kit #07, which yielded a positive reaction to the presence of crack/cocaine and fentanyl.

**Item 2:** Eleven (11) clear, twisted plastic baggies, each containing blue-green pills stamped "M/30." In total, the eleven baggies contained approximately 550 pills.

**Item 3:** More than 500 wax paper folds with a blue stamp "be happy," each containing a white powdery substance. This item was tested using NARK kit #33, which yielded a positive reaction to the presence of heroin and fentanyl.

**Item 4:** One (1) TCL flip phone.

**Item 5**: A prescription medication bottle labeled "Cephalexin 500mg capsule."

12.     These items were sent to the State of Connecticut Department of Emergency Services and Public Protection Laboratory for testing. Based on the manner in which the items were packaged, the quantity, and the BPD Officers' training and experience, the BPD Officers had probable cause to believe that they were not being consumed by JERMEL BATES for personal use.

13.     On January 12, 2024, the State of Connecticut Department of Emergency Services and Public Protection provided a Laboratory Report to Bridgeport Detective Timothy Leonard on the drug items submitted for testing. The results showed the following:

**Item 1:** The off-white, rock like substance tested positive for 78.976 grams of cocaine free base.

**Item 2:** The lab tested a single blue pill stamped "M/30" from each of the 11 baggies, and all eleven pills tested positive for fentanyl. The total weight of the approximately 550 pills was approximately 60.286 grams.

5

**Item 3:** The wax paper folds stamped "be happy" tested positive for heroin, fentanyl, and an unknown form of cocaine. The total weight of this item was over 5.88 grams.

14.     The State of Connecticut Department of Emergency Services and Public Protection Division of Scientific Services issued a Latent Print Unit Report that confirmed BATES's fingerprint impressions on three (3) of the eleven (11) clear twisted plastic baggies containing blue-green tablets, which were labeled in the Latent Print Unit Report as items 002-001 through 002-011. Specifically, the results confirmed that JERMEL BATES (DOB:11/22/1995) left a left index finger impression on items 002-002-L1 and 002-003-L1 and a right middle finger impression on item 002-010-L1.

15.     BPD Officers conducted a DMV records check for the blue Nissan Altima, CT registration BH09540, and the results revealed that the vehicle was registered to BATES with no insurance. While inventorying the vehicle for tow, BDP Officers also located a locked safe within the trunk of the vehicle. Officers also observed a white-cased "iPhone" within the center console of the vehicle. These items were left in the vehicle, and the vehicle was towed while other BPD officers applied for a search warrant.

16.     Meanwhile, on June 25, 2023, BPD Officer Michael Swix was assigned to a report of an assault in which the patient's injuries were consistent with being involved in a motor vehicle accident. The patient was at Bridgeport Hospital. BPD Officer Fowler conducted a follow up to the Bridgeport Hospital Family Room and spoke to a female, later identified as CHARNESSA ORTIZ, who was a passenger involved in the crash. Ortiz first stated that she and her boyfriend, BATES, had gotten into a fight at a gas station. When asked if she knew who they fought, Ortiz said "I don't know." Ortiz later stated that after BATES picked her up in his car, they were followed by a suspicious vehicle. BATES was "scared, he didn't know what to do," so he "sped

6

off" and fled from the suspected vehicle. BATES turned a corner, crashed his vehicle, and then they fled on foot towards Bridgeport Hospital for medical attention. Ortiz stated she was unaware of where she was located at the time of the crash.

17.      Ortiz claimed multiple times that she did not know that there were narcotics in the vehicle. She also claimed that her boyfriend never sold drugs or came across drugs in his life. Ortiz said she has been in a relationship with BATES for twelve (12) years and she further stated that he did not have any ties to the contraband in the car. Officer Fowler asked her if she had any idea as to how the drugs got inside the glove box, and she stated "No." Ortiz had multiple small lacerations to her face and arms; however, she stated that she refused medical attention from hospital staff.

18.      BPD Officer Swix and Officer Fowler (the "Officers") then interviewed BATES and asked him what transpired prior to the accident. BATES said he only remembered crashing his vehicle and walking into the E.R. of Bridgeport Hospital asking for medical assistance, but nothing in between. The Officers told BATES that they found narcotics in his car and asked if he knew who they belonged to, and he at first stated "No." However, once the Officers advised him that the drugs were on the passenger side where Ortiz had been sitting, and that there was a possibility that she could be charged in connection with the drugs, BATES told the Officers that they did not belong to Ortiz and that they were his drugs.

19.      BATES stated that he was the operator at the time of the accident, that the vehicle belongs to him, and that he is the owner of the contraband located in the passenger glove box. These statements, and those of Ortiz, were captured on the body-worn camera of the BPD officers. Following BATES's statements, the Officers placed BATES in handcuffs (checked for

proper fit) and notified him that he would be processed and booked after being released from the hospital.

20.     BATES had sustained a laceration to his left eyebrow and upper face as well as a large contusion to his left cheek and left eye. Due to his injuries, he was admitted into Bridgeport Hospital for further evaluation, but was subsequently released.

21.     BPD Detective Vincent Lariccia and this affiant assisted BPD Patrol Officers with a narcotics investigation into the above incident. On June 25, 2023, BPD Detective Lariccia and this affiant secured two (2) search warrants, one for the 2012 Nissan Altima, color blue, CT REG BH09540, VIN # 1N4AL2AP1CC208111, and one for a black and silver safe located inside the vehicle. The warrants were signed by the Honorable Judge Kevin Russo, Connecticut Superior Court.

The following items were seized from the Nissan Altima:

**Item V1:** One (1) silver/white IPHONE with cracked rear glass, located in the center console of vehicle.

**Item V2:** One (1) black and silver "Sentry Safe," located in the trunk of the vehicle.

**Item V3:** One (1) Connecticut ID Card, #119540018, for Jermel BATES, DOB 11/22/95, located in the center console of the vehicle.

**Item V4:** Two (2) black and silver Sentry Safe keys, located in the center console of the vehicle.

The following items were seized from the Sentry Safe:

**Item S1:** One (1) box of vinyl gloves and one (1) box of new and empty wax paper folds.

BPD Detective Lariccia and this affiant did not apply for a warrant to search the iPhone, which appeared to be broken, and the phone was not searched.

8

22.     BATES was arrested on June 25, 2023, and charged in Connecticut Superior Court with various offenses, including three counts of possession of controlled substances with intent to sell. He was released on a $125,000 bond.

23.     In March of 2024, the FBI, together with this affiant, conducted a pattern of life surveillance on BATES in anticipation of applying for a federal arrest warrant. The FBI learned through a confidential source on or about February 29, 2024, that BATES was living with Ortiz on Newfield Avenue in Bridgeport, Connecticut. A DMV records check confirmed that Ortiz lives at 584 Newfield Avenue, Third Floor, Bridgeport, Connecticut 06607. Through investigative techniques—including physical surveillance—the FBI also learned that BATES was using a rental blue Honda Accord, CT registration BK47885, VIN: 1HGCP2F33BA024121, as his primary vehicle.

24.     During the period of surveillance, the FBI observed BATES leaving and returning to the 584 Newfield Avenue on multiple occasions.

25.     On March 12, 2024, at approximately 2:00 p.m., FBI agents observed BATES leaving the TARGET PREMISES, followed him to Fremont Street, and observed BATES park on the north side of the street. BATES was alone in his vehicle when he parked the car. One of the agents surveilling BATES then looped around the block and, approximately two minutes later, returned to Fremont Street to observe an unidentified female, who had not been in the vehicle two minutes prior, exit BATES's vehicle from the passenger seat and enter a silver Honda Civic. Based on my training and experience, the short time period in the passenger's seat of the car (less than two minutes), BATES's history, and discussions with the agents surveilled BATES, there is probable cause to believe, and I do believe, that BATES was engaged in a hand-to-hand

narcotics sale during this time. Based on this and other observations, this affiant and other agents have probable cause to believe that BATES was storing narcotics in his residence.

26.     On March 18, 2024, the Hon. S. Dave Vatti, United States Magistrate Judge, District of Connecticut, issued a warrant authorizing this affiant to arrest BATES for committing the TARGET OFFENSES. *See* 24-mj-234 (SDV).

27.     At approximately 10:30 a.m. on March 19, 2024, this affiant, the FBI, and the BDP set up surveillance at the TARGET PREMISES for the purpose of serving the arrest warrant. At approximately 12:57 p.m., BATES emerged from the front door of 584 Newfield Avenue, walked towards the Blue Honda, and got into the driver's seat of the vehicle. This affiant then served the arrest warrant and searched BATES's person.

28.     During the search of BATES's person, this affiant located keys, a cellular phone, a plastic bag with approximately 10 wax paper folds with suspected heroin—consistent with the wax paper folds found in BATES's vehicle on June 25, 2023—two additional plastic bags each with multiple blue-green pills stamped "M/30" with suspected fentanyl—consistent with the pills found in BATES's vehicle on June 25, 2023—and a clear plastic bag with a small quantity of marijuana. Based on the manner in which the items were packaged, the quantity, and my training and experience, this affiant believes that the narcotics were not being consumed by BATES for personal use. Additionally, BATES's prior arrest and history indicate to me that he continued his narcotics sales immediately after his arrest on state charges.

29.     ~~This affiant~~ Fellow law enforcement officers SDV (RV) tested the keys found on BATES's person at the TARGET PREMISES and determined that the keys were capable of unlocking the door to Apartment 3.

30.     BATES emerged from the TARGET PREMISES immediately before entering the vehicle. The drugs were on his person and he did not have time to get them from the vehicle. As

such, I have probable cause to believe and do believe that BATES likely stores his narcotics in his residence and that there is likely to be additional narcotics as well as indicia of drug trafficking including scales, packaging materials and money earned from narcotics sales in the TARGET PREMISES.

31.    This affiant has reviewed BATES's criminal record. BATES has several felony convictions in Connecticut Superior Court, including Possession of Narcotics with Intent to Sell on August 14, 2019 (he was sentenced to 21 months' imprisonment), and Sale of Narcotics (Heroin) on November 2, 2016 (he was sentenced to 4 years' imprisonment).

## AUTHORIZATION REQUEST

32.    Based upon the totality of the facts and circumstances set forth herein, my training and experience, my personal involvement with this case, consultations with fellow law enforcement officers, and my familiarity with the practices and methods of narcotics trafficking, I know that:

   a.    narcotics traffickers must maintain on hand U.S. currency in order to maintain and finance their on-going narcotics business;

   b.    narcotics traffickers maintain books, records, receipts, notes, ledgers, money orders and other papers relating to the transportation, receipts, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where traffickers have ready access to them, including within their stash houses, residences and automobiles;

   c.    persons involved in narcotics trafficking conceal in their residences caches of drugs, scales, drug packaging materials, cutting agents and diluents, large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions; and the evidence of financial transactions relating to

11

obtaining, transferring, secreting or spending of sums of money made from narcotics trafficking activities;

d.       it is common for narcotics traffickers to hide contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, stash houses or within their automobiles for ready access and for concealment of these items from law enforcement authorities;

e.       narcotics traffickers commonly utilize cellular telephones to conduct their drug trafficking business and that they maintain addresses or telephone numbers in books, papers, cellular telephones or electronic organizers which reflect names, addresses and/or telephone numbers of their clients and associates in the drug trafficking organization. Traffickers also maintain photographs and videotapes of participants and associates in narcotic trafficking activity, and property acquired as a consequence of narcotics trafficking activities; and

f.       narcotics traffickers commonly have in their possession, or at their residences, stash houses and in their automobiles police scanners used to detect law enforcement activity, and firearms, ammunition and other weapons that are used to protect and secure a narcotics trafficker's property.

33.     Based upon the information set forth herein, there is probable cause to believe, and I do believe, that the TARGET PREMISES contains contraband, fruits, instrumentalities and evidence of the TARGET OFFENSES, or material otherwise criminally possessed, or property that is or has been used as the means of committing the TARGET OFFENSES. Accordingly, I

request that the Court issue a warrant authorizing the search of the TARGET PREMISES as

more fully described in Attachment A for the items identified in Attachment B.

_____

Kyle S. Lipeika
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this 19th day of March, 2024, at Bridgeport, Connecticut.

_____

HONORABLE S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

13

# ATTACHMENT A

## Property to Be Searched

584 Newfield Avenue, Third Floor, Apartment #3, Bridgeport, Connecticut 06607, more fully described as a tan apartment building with blue trim. The front exterior door of the residence is glass with a metal frame and the number 584 displayed on the glass. Immediately inside the residence is a staircase leading to the second floor. On the second floor is another staircase leading to the third floor. At the top of that staircase is a brown, wooden door with the number 3 and a sign stating "HOME sweet HOME."



## ATTACHMENT B

### Items to Be Seized

### Location: 584 Newfield Avenue, Third Floor, Apartment #3, Bridgeport, Connecticut 06607

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use of which is or has been used as the means of committing a criminal offense, namely, Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) (possession with the intent to distribute controlled substances, namely fentanyl, heroin, and cocaine) (the "TARGET OFFENSE") including:

a.  contraband, quantities of controlled substances or listed chemicals, scales, cutting agents and diluents and drug packaging materials; and residues of controlled substances or listed chemicals;

b.  Drug paraphernalia, including scales, packaging materials, and dilutents;

c.  Cash, representing proceeds of drug trafficking;

d.  Firearms, ammunition and other weapons;

e.  Addresses or telephone numbers in books, papers, cellular telephones or electronic organizers, and their electronically stored contents, which reflect names, addresses, telephone numbers of and text messages to or from their associates and/or clients in narcotic trafficking activity; photographs and videotapes of participants and associates in narcotic trafficking activity and property acquired as a consequence of narcotics trafficking activities; Personal books, papers and photographs reflecting identities, names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;

f.  Records relating to income and expenditures of money and wealth, to wit: money orders, wire transfers, cashier's checks, receipts, bank statements, passbooks, checkbooks, checkbook registers, safety deposit box rental agreements and safety deposit box keys, as well as precious metals and gems such as gold, silver, diamonds;

g.  Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

h.  Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances, including computers and computerized data, computer discs, and computer related equipment and information;

i.  Telephones to include but are not limited to, cellular telephones, electronic personal organizers, telephone answering machines, and telephone answering machine tapes;

j.  Closed containers within which the foregoing items may be stored and secreted, including safes and secured containers.